IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARK A. REESE,                          *
                                        *
        Plaintiff,                      *
                                        *
vs.                                     *   CIVIL ACTION NO. 25-00035-KD-B
                                        *
DR. LOVEGOOD, *et al*.,                 *
                                        *
        Defendants.                     *

## REPORT AND RECOMMENDATION

This action is before the Court[1] for the screening of Plaintiff Mark A. Reese's operative complaint (Doc. 31)[2] pursuant to 28 U.S.C. §§ 1915 and 1915A. After a thorough review of Reese's complaint, and for the reasons discussed below, the undersigned

---

[1] This case has been referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(R).

[2] A review of Reese's initial complaint (Doc. 1) revealed several deficiencies, which the Court explained to Reese. (See Doc. 3). At the Court's direction, Reese filed a first amended complaint (Doc. 16), which lacked sufficient facts to state a claim upon which relief could be granted. (See Doc. 22). Because Reese is proceeding without counsel, the Court instructed him on the elements needed to establish his claims and provided him with a second opportunity to amend his complaint to state a claim. (Id.). After it appeared that Reese had failed to comply with the Court's deadline to file a second amended complaint, the undersigned entered a report and recommendation to dismiss this action without prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and the Court's inherent authority. (Doc. 25). However, after objection from Reese, the Court withdrew the report and recommendation and allowed Reese a final chance to file a second amended complaint on this Court's form in attempt to state a claim. (Doc. 30). Reese has now filed his second amended complaint (Doc. 31), which is the operative complaint in this action.

**RECOMMENDS** that Reese's excessive force claims against Officers C. Norwood, J. Ellontison, D. Davis, A. Brown, and Q. Brown, and Reese's inadequate medical care claim asserted against District One Mobile County Commissioner Merceria Ludgood (or "Dr. Lovegood"),[3] be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Thus, the undersigned submits that the only claims that should proceed in this action are Reese's claims of inadequate medical care asserted against NaphCare, Inc., Sheriff Paul Burch, and Warden Sam Houston.

I.    **Summary of the Complaint.**

Reese is suing for excessive force used against him by Officers J. Ellontison, D. Davis, A. Brown, and Q. Brown after Officer C. Norwood (collectively, the "Officer Defendants") gave a "false statement" about him that led to the officers attacking him and injuring three of his fingers. (See Doc. 31 at 5-7, 12-15). Reese further claims that he was denied adequate medical treatment after the assault, and that NaphCare, Inc., Sheriff Paul Burch, Warden Sam Houston, and District One Mobile County Commissioner Merceria Ludgood (collectively, the "Supervisory Defendants") were deliberately indifferent to his healthcare needs. (Id. at 8-11, 15-16).

---

[3] Reese's complaint incorrectly refers to Commissioner Ludgood as "Dr. Lovegood."

According to Reese, the incident occurred in his cell at the Mobile County Metro Jail on July 27, 2024, and was caught on camera. (Id. at 6).  Reese claims that during a "pat down" search for handmade knives, Officer Norwood made the "false statement" that Reese "jerk[ed] away" from her.  (Id.).  After a non-party sergeant locked Reese's cell down, Officer J. Ellontison entered the cell with three other male officers, D. Davis, A. Brown, and Q. Brown. (Id. at 7).  Officer Ellontison questioned Reese, "Did you 'jerk' away from  . . . a female," and according to Reese, "[h]is eye(s) looked like they was . . . on some [d]rug(s)."  (Id.).  Reese responded, "No!"  (Id.).  Officer Ellontison told Reese to pack his bags and then "push[ed]" Reese, "so [Reese] push[ed] him in the face and stated, '[D]o not put your hands on me!"  (Id. at 7, 12).  Officer Davis then "puched [sic]" Reese in the face and the head and placed Reese's right hand in "open hand cuffs," while Officers Ellontison, Q. Brown, and A. Brown "smashed" three of Reese's left-hand fingers into "closed hand cuffs," causing injury and permanent damage to his fingers.  (Id. at 7, 12-15).

Reese further claims that Commissioner Ludgood, NaphCare, Inc., Sheriff Burch, and Warden Houston acted with deliberate indifference to his medical needs based on the denial or delay of medical care following the incident.  Liberally reading the complaint, it appears that Reese did not receive a body chart following the incident (id. at 5) but was evaluated by Dr. William

"the next day" and then sent to the emergency room at U.S.A. Medical Center. (Id. at 5-6). Reese indicates that he received "x-rays, medical reports, [and] medications" following the incident, but he claims he was not taken to U.S.A. Trauma Center for his scheduled two-week follow up and instead had to wait until "Oct. 2024 . . . 3 months later." (Id. at 5, 9). Reese claims that the Supervisory Defendants have "been deliberately indifferent to the follow-up physical treatments and physical therapy and have not provided the proper device for his left three fingers that are disfigured for the rest of his life." (Id. at 9 (cleaned up)).

For relief, Reese requests that the Court "have the DOJ and U.S. Attorney's Office" for this district investigate his health and welfare and PREA complaints; grant him immediate medical treatments, including physical therapy, and a release order; order Defendants to pay punitive damages, compensatory damages, fees, and court costs; and order an "investigation per 18 U.S.C. §§ 241 and 242." (Id. at 17 (cleaned up)).

**II. Screening Standards.**

Reese's complaint is subject to screening both because he is a prisoner seeking relief from a governmental entity or officer, see 28 U.S.C. § 1915A, and because he is proceeding without prepayment of fees (in forma pauperis), see id. at § 1915(e)(2)(B). Section 1915(e)(2)(B) requires a district court to dismiss an in

4

*forma pauperis* prisoner action if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  Id. at § 1915(e)(2)(B)(i)-(iii).  Similarly, under § 1915A, a court must review a prisoner's complaint against a governmental entity or officer to identify cognizable claims and must dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id. at § 1915A(b)(1)-(2).  Dismissal for these reasons is mandatory rather than discretionary.

A claim is frivolous "when it appears the plaintiff has 'little or no chance of success.'"  Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citation omitted).  A court may conclude a claim has little or no chance of success when the claim is "based on an indisputably meritless legal theory," when its "factual contentions are clearly baseless," or when the defendant is immune from suit.  Neitzke v. Williams, 490 U.S. 319, 327 (1989).

A complaint may be dismissed for failure to state a claim upon which relief may be granted when it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007)).  This means that a complaint must have sufficient factual allegations "to raise a right to relief above the speculative level," and the allegations must "show that the pleader is entitled to relief."  _Twombly_, 550 U.S. at 555, 557. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." _Iqbal_, 556 U.S. at 678.

In reviewing Reese's complaint, the Court liberally construes his allegations, holding them to a more lenient standard than those drafted by an attorney.  See _Tannenbaum v. United States_, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).  However, this leniency does not give the Court license "to rewrite an otherwise deficient pleading in order to sustain an action." _Campbell v. Air Jamaica Ltd._, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation omitted). Furthermore, the Court "accepts the complaint's factual allegations as true," _Daker v. Ward_, 999 F.3d 1300, 1307 (11th Cir. 2021), but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  _Iqbal_, 556 U.S. at 681.  As a _pro se_ litigant, Reese is still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." _Moon v. Newsome_, 863 F.2d 835, 837 (11th Cir. 1989).

**III. Discussion.**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege facts showing that a person acting under

color of state law violated a specific federal constitutional right or federal statutory provision. Doe v. Sch. Bd. of Broward Cty., Fla., 604 F.3d 1248, 1265 (11th Cir. 2010); see also Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) ("A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States."). In a § 1983 action, the plaintiff must also to establish a causal connection between a defendant's acts or omissions and the alleged violation of the plaintiff's rights. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam). That is, the plaintiff must show that the named defendant was the proximate cause of his injuries, Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1165 (11th Cir. 2006), and that the injury "would not have occurred but for [the defendant's] conduct and if there were no unforeseeable intervening acts superseding [the defendant's] liability." Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012) (citation omitted).

A. **Excessive Force Claims Against the Officer Defendants.**

Reese's excessive force claims are analyzed under the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force

claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015). The standard for assessing a pretrial detainee's excessive force claim "is solely an objective one." Id. at 397. To establish such a claim, a plaintiff "must show [] that the force purposely or knowingly used against him was objectively unreasonable. . . . A court must make this determination from the perspective of a reasonable [official] on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. at 396-97. Whether the force used against the plaintiff is considered objectively unreasonable turns on the "facts and circumstances of [his] particular case." Graham, 490 U.S. at 396. Courts consider six non-exclusive factors for determining the reasonableness or unreasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 576 U.S. at 397.

Inherent in the protection afforded by the constitution is the principle that not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992). "Not every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (quotation omitted). Moreover, "it is well settled law that a claim for verbal abuse or threats is not cognizable" under § 1983. Scott v. Cook, 2005 WL 5976136, *4 (N.D. Fla. Nov. 15, 2005); see, e.g., Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

Taking as true all of Reese's allegations in this case, it cannot be said that Officer Norwood's alleged false statement "caused" force to be used on Reese. Even accepting that Officer Norwood's statement was false, and that it prompted Officers Ellontison, Davis, Q. Brown, and A. Brown to respond to Reese's cell, there are no facts suggesting that Officer Norwood encouraged or had reason to expect the subsequent use of force by those officers. That is particularly true given that almost all of the force allegedly used against Reese by the officers was in direct response to the intervening event of Reese pushing Officer Ellontison in the face and telling him, "[D]o not put your hands on me!" (See Doc. 31 at 7). Accordingly, Reese has failed to state a claim upon which relief may be granted against Officer C. Norwood, and the allegations against Officer Norwood are due to be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

With respect to Officer Ellontison, Reese appears to allege that after Reese denied jerking away from Officer Norwood, Officer

Ellontison told him to pack his bags and then pushed him, which prompted Reese to push Officer Ellontison in the face and tell him, "[D]o not put your hands on me!" (See id.). To the extent Reese alleges that Officer Ellontison's "push" constituted excessive force, he has failed to state a claim. "The . . . prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9–10 (quoting Whitley, 475 U.S. at 327); see, e.g., McCall v. Crosthwait, 336 F. App'x 871, 873 (11th Cir. 2009) (per curiam) (affirming district court's finding that the amount of force used and the extent of plaintiff's injury were *de minimis* where officer pushed plaintiff out of jail's elevator, causing him to hit steel cell door, receive a bruise on his right elbow and shoulder, and complain of pain in his shoulder and forearm). Reese has alleged no facts that might plausibly suggest that Officer Ellontison's "push" was anything but *de minimus* force, nor any facts suggesting that it was objectively unreasonable.

Moreover, with the exception of the alleged "push" by Officer Ellontison, Reese clearly describes that the force used against him was in direct response to Reese pushing Officer Ellontison in the face and telling him, "[D]o not put your hands on me!" (See Doc. 31 at 7). From there, it was reasonable for Officers

10

Ellontison, Davis, A. Brown, and Q. Brown to use force "to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320 (1986); see also Pearson v. Taylor, 665 F. App'x 858, 864 (11th Cir. 2016) (per curiam) ("[P]rison officers are authorized to use force when a prisoner repeatedly fails to obey an order. Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal citation omitted).

Based on Reese's allegations, he plainly threatened Officer Ellontison verbally and used physical force against Officer Ellontison, creating a prison security issue and disturbance. According to Reese's complaint, it is obvious that in response to Reese's actions, Officers Davis, A. Brown, Q. Brown, and Ellontison acted to restore security and order to the situation, namely by restraining Reese in handcuffs. Without more, the fact that Reese was injured during the process of putting handcuffs on him does not convert the security disturbance and restoration of order into cruel and unusual punishment. Stated another way, "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense," Whitley, 475 U.S. at 319, as "prison administrators are charged with the responsibility of

ensuring the safety of the prison staff . . . , as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" Id. at 320 (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). Prison officials are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-22 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Because Reese fails to put forth factual allegations describing words or actions of the Officer Defendants that indicate an unreasonable response to his insubordinate and violent act of pushing an officer in the face and demanding the prison officer "not put his hands on [him]," Reese has failed to state a claim for excessive force against Officers Ellontison, Davis, A. Brown, and Q. Brown based on the force those officers used against Reese in response to his act of pushing Officer Ellontison in the face and demanding that Officer Ellontison not put his hands on him. And, as already noted, Reese has failed to state a claim upon which relief can be granted against Officer Norwood based on her alleged "false statement" that Reese "jerk[ed] away" from her while she was performing a "pat down," or against Officer Ellontison for his alleged "push."

**B.    Reese has failed to state a claim of deliberate indifference to his medical needs against County Commissioner Merceria Ludgood.**

Reese broadly alleges he was denied adequate medical treatment following the July 27, 2024 use of force discussed above. He brings these claims against NaphCare, Inc., Commissioner Ludgood, Sheriff Burch, and Warden Houston. He is suing NaphCare, Inc. as the entity hired to provide health care and medical treatment at the Mobile County Metro Jail and for allegedly failing to provide him with medical devices, physical therapy, and timely follow-up care (Doc. 31 at 9, 15-16); District One Mobile County Commissioner Merceria Ludgood as the supervisor responsible for hiring and paying NaphCare, Inc. (Doc. 16 at 6); Sheriff Paul Burch as the supervisor over the Mobile County Metro Jail and NaphCare, Inc., who is responsible for ensuring adequate medical treatment is provided to inmates (Doc. 31 at 8); and Warden Sam Houston as the supervisor over the Mobile County Metro Jail, its employees, and NaphCare, Inc., who is also responsible for ensuring adequate medical treatment is provided to inmates. (Id.).

"Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees like [Reese]." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). "However, the standards under the Fourteenth Amendment are identical to those under the Eighth." Id. "Deliberate indifference of a medical

13

need violates the Eighth Amendment because it amounts to 'the unnecessary and wanton infliction of pain. . . .'" <u>Hinson v. Bias</u>, 927 F.3d 1103, 1121 (11th Cir. 2019) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  To establish a claim for deliberate indifference to a medical need, a plaintiff must show: (1) he had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) the defendant's deliberate indifference and the plaintiff's injury were causally related.  <u>Id.</u>

> [A] "serious medical need" is an injury or condition that a physician has diagnosed as requiring treatment or that "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  To qualify as a "serious medical need," an injury or condition, if not treated, must create a "substantial risk of serious harm."

<u>Id.</u> at 1121–22 (internal citations omitted).

Reese's inadequate medical care allegations are asserted against the defendants in their supervisory roles.  "[T]he standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous." <u>Christmas v. Harris County, Ga.</u>, 51 F.4th 1348, 1355 (11th Cir. 2022) (quotation omitted).  There is no "vicarious liability, including respondeat superior, in § 1983 actions." <u>Goebert v. Lee County</u>, 510 F.3d 1312, 1331 (11th Cir. 2007).  Thus, a defendant "may not be sued under Section 1983 for the acts of others but, rather, only for its own acts." <u>Hamilton v. City of Jackson</u>, 508 F. Supp. 2d 1045, 1056 (S.D. Ala. 2007), <u>aff'd</u>, 261 F. App'x 182

(11th Cir. 2008). Accordingly, a plaintiff asserting a claim under 42 U.S.C. § 1983 must show a causal connection between each defendant's actions, orders, customs, or policies and the alleged violation of the plaintiff's rights. Zatler, 802 F.2d at 401. A casual connection may be established by alleging sufficient facts that show:

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

Myrick v. Fulton County, Ga., 69 F.4th 1277, 1297 (11th Cir. 2023) (quotation omitted).

Reese has made no allegations against Commissioner Ludgood in his operative complaint. Even in prior pleadings, Reese has only alleged that Commissioner Ludgood is liable because she is responsible for hiring and approving the budget that pays the medical provider for the Mobile County Metro Jail. (See Doc. 16 at 6). But Reese does not allege any facts indicating that Commissioner Ludgood personally participated in decisions concerning his medical treatment; that she was responsible for the promulgation of any custom or policy that resulted in Reese receiving inadequate medical care; that there was a widespread history or pattern of inadequate medical treatment at the jail of

which she had notice and failed to correct; or that she directed or knew that subordinates would act with deliberate indifference to jail inmates' serious medical needs and failed to stop them from doing so. Because Reese has failed to causally connect Commissioner Ludgood to the claimed constitutional violation, he has failed to state a claim upon which relief may be granted against her, and the allegations against Commissioner Ludgood are due to be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

As to NaphCare, Inc., Sheriff Paul Burch, and Warden Sam Houston, Reese alleges direct, personal participation in the denial, delay, or inadequate medical care received for his injured and permanently disfigured fingers. He claims NaphCare, Inc. "did not follow-up with the physical therapy or visits from U.S.A. Medical Center in time or denies treatments for his left three fingers that are disfigured." (Doc. 31 at 16 (cleaned up with alterations and quotation marks omitted)). Reese appears to allege that upon discharge from the emergency room following the incident on July 27, 2024, he was ordered to follow up in two weeks with U.S.A. Medical Center. (Id. at 9). However, Reese claims NaphCare, Inc. did not provide the follow-up appointment until "3 months later" in October 2024, failed to provide a "medical device" for his left three fingers, and failed to provide follow-up physical therapy treatments – leaving his "left three fingers being

16

disfigured, for the rest of his life." (Id.).  Reese claims Sheriff Burch is responsible for providing medical care to inmates at the Mobile County Metro Jail, and that Reese "did give notices and complaints and regular grievances, medical grievances, and medical appeals through the kiosk machine." (Id. at 8 (cleaned up with alterations and quotation marks omitted)).  Similarly, Reese claims Warden Houston is responsible for making sure inmates at the Mobile County Metro Jail are "provided with adequate medical care and medical treatments," and that Reese "did give notices and complaints, regular grievances, medical grievances, and medical appeals . . . by kiosk machine." (Id. (cleaned up and quotation marks omitted)).

Read liberally, at this stage of the action, the allegations asserted against NaphCare, Inc., Sheriff Burch, and Warden Houston are sufficient to narrowly state a claim for deliberate indifference to Reese's serious medical needs.

### IV. Conclusion.

For the reasons discussed herein, it is **RECOMMENDED** that:

1. The claims of excessive force asserted against Officers C. Norwood, J. Ellontison, D. Davis, A. Brown, and Q. Brown be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2. The claim of inadequate medical care against District One Mobile County Commissioner Merceria Ludgood (or "Dr. Lovegood"), be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

3. Defendants C. Norwood, J. Ellontison, D. Davis, A. Brown, Q. Brown, and Merceria Ludgood (or "Dr. Lovegood") be **DISMISSED without prejudice** from this action prior to service of the complaint.

4. The claims of inadequate medical care asserted against Defendants NaphCare, Inc., Sheriff Paul Burch, and Warden Sam Houston be permitted to proceed.

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual

and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **20th** day of **January, 2026.**

<u>            /s/ SONJA F. BIVINS         </u>
**UNITED STATES MAGISTRATE JUDGE**